No. 24-50564

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

―――――――――――――

UNITED STATES OF AMERICA,
Plaintiff–Appellee,

v.

PETER VILLA CORDOVA,
Defendant–Appellant.

―――――――――――――

On Appeal from the United States District Court for the
Western District of Texas, No. 7:24-CR-31
(Hon. Walter David Counts, III)

―――――――――――――

**UNITED STATES' RESPONSE TO PETITION
FOR REHEARING EN BANC**

―――――――――――――

| | |
|---|---|
| JUSTIN R. SIMMONS<br>United States Attorney | A. TYSEN DUVA<br>Assistant Attorney General |
| ZACHARY C. RICHTER<br>Assistant United States Attorney<br>Western District of Texas | JOSH A. GOLDFOOT<br>Deputy Assistant Attorney General |
| | WILLIAM A. GLASER<br>Attorney, Appellate Section<br>Criminal Division<br>U.S. Department of Justice<br>950 Pennsylvania Ave, NW, Ste. 1264<br>Washington, DC 20530<br>(202) 532-4495<br>William.Glaser@usdoj.gov |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..............................................................................i

TABLE OF AUTHORITIES ....................................................................iii

INTRODUCTION ................................................................................. 1

ISSUE PRESENTED .............................................................................. 1

STATEMENT OF THE CASE.................................................................. 1

    A.    Course Of Proceedings................................................................ 1

    B.    Relevant Facts ........................................................................ 2

ARGUMENT ......................................................................................... 2

I.    Rehearing En Banc Is Necessary to Maintain Uniformity in This Court's Decisions.................................................................... 3

II.    This Court's Second Amendment Precedent Conflicts with the Decisions of Other Circuits. ................................................. 7

III.    Section 922(g)(1)'s Constitutionality Is an Issue of Exceptional Importance.................................................................. 9

IV.    Section 922(g)(1) Complies With the Second Amendment. .................. 10

    A.    Section 922(g)(1) is constitutional as a general matter. ............... 11

        1.    Section § 922(g)(1) is consistent with legislatures' historical authority to disarm dangerous groups. .............. 11

        2.    Section 922(g)(1) is consistent with legislatures' historical authority to punish felony offenses severely and permanently............................................................. 13

        3.    The founding-era understanding of the Second Amendment confirms Congress's power to disarm felons. .................................................................. 15

        4.    Any constitutional concerns on the margins are remediated by § 925(c). .................................................. 16

    B.     At the very least, § 922(g)(1) is constitutional as applied to dangerous felons like Cordova. ................................................. 18

CONCLUSION.................................................................................... 19

CERTIFICATE OF COMPLIANCE ....................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Barrett v. United States,*
423 U.S. 212 (1976) .................................................................. 12

*Heller v. District of Columbia,*
554 U.S. 570 (2008) ...............................................................11, 15

*Kanter v. Barr,*
919 F.3d 437 (7th Cir. 2019)................................................... 11

*Medina v. Whitaker,*
913 F.3d 152 (D.C. Cir. 2019) ............................................... 14

*Mullis v. Lumpkin,*
47 F.4th 380 (5th Cir. 2022) .....................................................5

*New York State Rifle & Pistol Ass'n v. Bruen,*
597 U.S. 1 (2022)................................................................... 7, 11

*Pitsilides v. Barr,*
128 F.4th 203 (3d Cir. 2025)................................................... 5, 8

*Range v. Attorney General,*
124 F.4th 218 (3d Cir. 2024) (en banc).....................................8

*Rehaif v. United States,*
588 U.S. 225 (2019) ...................................................................9

*Shelby Cnty., Ala. v. Holder,*
570 U.S. 529 (2013) ................................................................ 10

*United States v. Alaniz,*
146 F.4th 1240 (5th Cir. 2025)..................................................5

*United States v. Bean,*
537 U.S. 71 (2002)...............................................................16, 17

*United States v. Betancourt,*
139 F.4th 480 (5th Cir. 2025) ................................................ 4, 6

*United States v. Bullock*,
  123 F.4th 183 (5th Cir. 2024) .................................................................. 4

*United States v. Charles*,
  No. 23-50131, 2025 WL 416092 (5th Cir. Feb. 6, 2025)............................. 4

*United States v. Collette*,
  No. 22-51062, 2024 WL 4457462 (5th Cir. Oct. 10, 2024) ......................... 4

*United States v. Cordova*,
  176 F.4th 381 (5th Cir. 2026) ............................................................. 3, 18

*United States v. Diaz*,
  116 F.4th 458 (5th Cir. 2024) ........................................................ 3, 11, 14

*United States v. Doucet*,
  No. 24-30656, 2025 WL 3515404 (5th Cir. Dec. 8, 2025)........................... 7

*United States v. Duarte*,
  137 F.4th 743 (9th Cir. 2025) (en banc).................................. 7, 12, 13, 16

*United States v. Dubois*,
  139 F.4th 887 (11th Cir. 2025)................................................................. 7

*United States v. Hembree*,
  165 F.4th 909 (5th Cir. 2026), *petition for cert. docketed*,
  No. 25-1219 (Apr. 27, 2026)..................................................................... 6

*United States v. Hernandez*,
  159 F.4th 425 (5th Cir. 2025) .................................................................. 5

*United States v. Hunt*,
  123 F.4th 697 (4th Cir. 2024) .................................................................. 7

*United States v. Jackson*,
  110 F.4th 1120 (8th Cir. 2024)...................................................... 7, 12, 15

*United States v. Kimble*,
  142 F.4th 308 (5th Cir. 2025) ...................................................... 4, 5, 6, 11

*United States v. Mancilla*,
  155 F.4th 449 (5th Cir. 2025) .................................................................. 6

*United States v. Mitchell*,
   160 F.4th 169 (5th Cir. 2025) ...................................................... 6

*United States v. Orozco*,
   No. 24-50104, 2025 WL 2623429 (5th Cir. Sep. 11, 2025) ......................... 3

*United States v. Rahimi*,
   602 U.S. 680 (2024) ........................................................ 12, 13, 14

*United States v. Reyes*,
   141 F.4th 682 (5th Cir. 2025) ...................................................... 5

*United States v. Schnur*,
   132 F.4th 863 (5th Cir. 2025) ...................................................... 3

*United States v. Simpson*,
   152 F.4th 611 (5th Cir. 2025) .................................................. 6, 18

*United States v. Squire*,
   177 F.4th 614 (5th Cir. 2026) ...................................................... 6

*United States v. Watson*,
   171 F.4th 1012 (7th Cir. 2026) ............................................... 8, 12, 14

*United States v. Williams*,
   113 F.4th 637 (6th Cir. 2024) ................................................ 8, 17, 18

*United States v. Williamson*,
   170 F.4th 435 (5th Cir. 2026), *petition for cert. docketed*,
   No. 25-7661 (June 24, 2026) ...................................................... 3

*Vincent v. Bondi*,
   127 F.4th 1263 (10th Cir. 2025) ................................................... 7

*Zherka v. Bondi*,
   140 F.4th 68 (2d Cir. 2025) ...................................................... 7

## Statutes, Rules, and Constitutional Provisions

U.S. Const. amend. II ............................................................ 11

18 U.S.C. § 922 ................................................................... 1

18 U.S.C. § 925 ............................................................................... 2, 16

Fed. R. App. P. 40 ...........................................................................6, 9, 20

Act of Apr. 30, 1790, ch. 9, § 14, 1 Stat. 112 ................................ 14

Act of Feb. 20, 1792, ch. 7, 1 Stat. 232 ........................................ 14

**Other Authorities**

2 *The Documentary History of the Ratification of the Constitution* (Merrill Jensen ed., 1976) ...................................................................... 15

*Application for Relief From Disabilities Imposed by Federal Laws With Respect to the Acquisition, Receipt, Transfer, Shipment, Transportation, or Possession of Firearms*, 90 Fed. Reg. 34,394 (July 22, 2025) ......................... 17

Bureau of Justice Statistics, Recidivism of Prisoners Released in 24 States in 2008: A 10-Year Follow-Up Period (2008-2018) (Sep. 2021)............................................................................................ 13

Edward Livingston, *A System of Penal Law for the United States of America* (1828) ....................................................................... 15

Edward Livingston, *System of Penal Law, Prepared for the State of Louisiana* (1824).................................................................... 15

*Granting of Relief; Federal Firearms Privileges*, 90 Fed. Reg. 17,835 (Apr. 29, 2025) ......................................................................... 17

*Granting of Relief; Federal Firearms Privileges*, 91 Fed. Reg. 8,532 (Feb. 23, 2026) ......................................................................... 17

*Granting of Relief; Federal Firearms Privileges*, 91 Fed. Reg. 32,094 (May 29, 2026) ......................................................................... 17

U.S. Sent. Comm'n, *Quick Facts: Felon in Possession of a Firearm* ...................... 9

*Withdrawing the Attorney General's Delegation of Authority*, 90 Fed. Reg. 13,080 (Mar. 20, 2025)................................................................. 16

## INTRODUCTION

A unanimous panel of this Court correctly held that § 922(g)(1)'s prohibition on possession of a firearm complies with the Second Amendment as applied to Peter Cordova, a twice-convicted felon. Nevertheless, as Cordova points out, this Court's Second Amendment precedent relating to § 922(g)(1) is internally inconsistent and out of step with other circuits. Moreover, the question of § 922(g)(1)'s constitutionality is one of exceptional importance. And this Court's precedent has caused it to wrongly find the statute unconstitutional in other cases. This case presents a good opportunity to clear up confusion and bring the Court into closer alignment with other circuits.

## ISSUE PRESENTED

Whether the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1), complies with the Second Amendment as applied to the defendant.

## STATEMENT OF THE CASE

### A.    Course Of Proceedings

A grand jury charged Cordova with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). He moved to dismiss the indictment, raising a Second Amendment challenge to the statute. After the district court denied the motion, Cordova conditionally pleaded guilty, preserving his right

1

to raise a Second Amendment challenge.  The district court sentenced Cordova to 34 months of imprisonment.  A panel of this Court affirmed.

### B.    Relevant Facts

In January 2024, Odessa police officers pulled over Cordova's truck shortly after his passenger visited a house known for drug distribution. ROA.251-52, 273.  Cordova admitted to having a firearm in his truck, and a drug dog alerted to the vehicle.  ROA.252, 274.  Officers found a loaded handgun under the driver's seat, as well as a digital scale and an unused hypodermic syringe.  ROA.274.  Cordova then admitted that he was a felon and that he and his passengers had unsuccessfully tried to "score" drugs. ROA.274.

Cordova had two prior felony convictions: a 2014 conviction for possession of marijuana between four ounces and five pounds and a 2011 conviction for evading arrest or detention with a motor vehicle.  ROA.276-77.

### ARGUMENT

This Court should grant rehearing en banc to clarify that § 922(g)(1) is constitutional as a general matter and that any relief for non-dangerous felons should be addressed through the statutory procedure administered by the Attorney General under 18 U.S.C. § 925(c), not through court-administered as-applied challenges.

**I.    Rehearing En Banc Is Necessary to Maintain Uniformity in This Court's Decisions.**

As several judges have observed, including in this case, this Court's decisions "send mixed signals about how district courts should analyze as-applied Second Amendment challenges to § 922(g)(1)." *United States v. Williamson*, 170 F.4th 435, 439 (5th Cir. 2026) (Willett, J., concurring), *petition for cert. docketed*, No. 25-7661 (June 24, 2026); *see United States v. Orozco*, No. 24-50104, 2025 WL 2623429, at *2 (5th Cir. Sep. 11, 2025) (unpublished) (Higginson, J., concurring in the judgment) ("inconsistent and ambiguous guidance"); *United States v. Cordova*, 176 F.4th 381, 387 (5th Cir. 2026) (Oldham, J., concurring in the judgment) ("ambiguity" and "confusion").

In *United States v. Diaz*, 116 F.4th 458, 469-70 (5th Cir. 2024), the Court held that § 922(g)(1) was constitutional as applied to a defendant with a felony theft conviction because theft "would have led to capital punishment or estate forfeiture" at the founding. The Court held that "[s]imply classifying a crime as a felony" is not enough and that the government must demonstrate "a longstanding tradition of disarming someone with a criminal history analogous to" the defendant's. *Id.* at 467, 469. In several cases following *Diaz*, this Court upheld § 922(g)(1) convictions simply because the defendant's offenses would have been capital offenses at the founding. *See United States v. Schnur*, 132 F.4th 863, 870-71 (5th Cir. 2025); *United States v. Collette*, No. 22-51062, 2024

WL 4457462, at *2 (5th Cir. Oct. 10, 2024) (unpublished); *United States v. Charles*, No. 23-50131, 2025 WL 416092, at *1 (5th Cir. Feb. 6, 2025) (unpublished).

In other cases, however, this Court has focused on the dangerousness of the underlying felony. Relying on the principle that "legislatures have the power to prohibit dangerous people from possessing guns," *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (quotation omitted), this Court has held that § 922(g)(1) is constitutional as applied to predicate felonies that "involve . . . violence," *United States v. Kimble*, 142 F.4th 308, 312 (5th Cir. 2025); that are "inherently dangerous," *id.* at 317 (5th Cir. 2025) (quotation omitted); or that "pose[] a threat to public safety," *United States v. Betancourt*, 139 F.4th 480, 484 (5th Cir. 2025) (quotation omitted). But the Court has not granted "blanket deference" to Congress to "label certain classes of people . . . dangerous." *Kimble*, 142 F.4th at 315. Instead, it has required the government to "identif[y] a class of persons at the Founding who were dangerous for reasons comparable to those Congress seeks to disarm today." *Id.* (quotation omitted).

This Court has made conflicting pronouncements about what courts can consider in this dangerousness inquiry. In *Kimble*, the Court rejected "the view that courts should 'look beyond' a defendant's predicate conviction 'and assess

4

whether the felon's history or characteristics make him likely to misuse firearms.'" *Kimble*, 142 F.4th at 318 (quoting *Pitsilides v. Barr*, 128 F.4th 203, 211-12 (3d Cir. 2025)).  "The relevant consideration," *Kimble* said, is a defendant's underlying felony convictions, "not unproven conduct charged contemporaneously with a defendant's (g)(1) indictment or prior conduct that did not result in a felony conviction."  *Id.*  The Court subsequently stated that its "binding precedent" requires "focusing on the nature of the predicate offense rather than on the defendant's broader criminal history or individual characteristics."  *United States v. Hernandez*, 159 F.4th 425, 428 (5th Cir. 2025) (citing *Kimble*).

In a case decided after *Kimble*, however, this Court rejected a defendant's contention that the Court could consider only the "explicit predicate underlying his § 922(g)(1) conviction."  *United States v. Alaniz*, 146 F.4th 1240, 1241 (5th Cir. 2025).  In the Court's view, "[c]onsidering a defendant's entire criminal record . . . makes sense."  *Id.* at 1242 (quotation omitted).  And in a case decided before *Kimble*, the Court considered the defendant's entire criminal history, including convictions sustained "following his engagement in the § 922(g)(1) conduct" and a felony juvenile adjudication.  *United States v. Reyes*, 141 F.4th 682, 686 (5th Cir. 2025).  Although *Reyes* controls as the first-in-time decision, *Mullis v. Lumpkin*, 47 F.4th 380, 391 (5th Cir. 2022), this

Court's later decisions in *Kimble* and *Alaniz* have sown confusion about what role a defendant's entire criminal record plays. The full Court's resolution is necessary to ensure uniformity in the Court's law. *See* Fed. R. App. P. 40(b)(2)(A).

Applying *Kimble*'s approach has produced unpredictable and inconsistent results. In this circuit, a defendant convicted of felony drug *distribution* can be constitutionally disarmed. *Kimble*, 142 F.4th at 318; *see United States v. Mancilla*, 155 F.4th 449, 452 (5th Cir. 2025); *United States v. Squire*, 177 F.4th 614, 625-26 (5th Cir. 2026). And this Court's "review of the defendant's conduct underlying the predicate offense is . . . permissible." *United States v. Simpson*, 152 F.4th 611, 614 (5th Cir. 2025) (quotation omitted); *see Betancourt*, 139 F.4th at 483-84. Yet a defendant convicted of felony drug *possession* cannot be constitutionally disarmed, even where the uncontested presentence report shows that the defendant's underlying conduct involved drug distribution, *see United States v. Hembree*, 165 F.4th 909, 915, 917-18 (5th Cir. 2026), *petition for cert. docketed*, No. 25-1219 (Apr. 27, 2026); that the defendant "threatened to shoot and kill his child's mother" while on supervised release from a prior federal firearms conviction, *see United States v. Mitchell*, 160 F.4th 169, 185-86 (5th Cir. 2025) (brackets and quotation omitted), or that the defendant was caught on video killing another person and

later lied about it, *see United States v. Doucet*, No. 24-30656, 2025 WL 3515404, at \*3-\*4 (5th Cir. Dec. 8, 2025) (unpublished); *see* Brief for the United States, *United States v. Doucet*, 2025 WL 1357373, at \*4 & n.2 (Apr. 30, 2025). *Kimble*'s approach to the dangerousness inquiry often gives demonstrably dangerous offenders access to guns.

## II.   This Court's Second Amendment Precedent Conflicts with the Decisions of Other Circuits.

This Court's Second Amendment precedent also conflicts with the decisions of other circuits.  Since *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), six other circuits have held that § 922(g)(1) is not susceptible to as-applied challenges, regardless of the underlying felony.  *Zherka v. Bondi*, 140 F.4th 68, 96 (2d Cir. 2025); *United States v. Hunt*, 123 F.4th 697, 706-08 (4th Cir. 2024); *United States v. Jackson*, 110 F.4th 1120, 1125-26 (8th Cir. 2024); *United States v. Duarte*, 137 F.4th 743, 761 (9th Cir. 2025) (en banc); *Vincent v. Bondi*, 127 F.4th 1263, 1264-66 (10th Cir. 2025); *United States v. Dubois*, 139 F.4th 887, 890-94 (11th Cir. 2025).

Two more circuits have left open the possibility of as-applied challenges but have not yet found the statute unconstitutional in any application.  The Seventh Circuit held that "the legislature may determine that classes of people are dangerous" but did not decide whether "a felon whose predicate felony offense is not 'dangerous'" could mount a successful Second Amendment

challenge. *United States v. Watson*, 171 F.4th 1012, 1022, 1025 (7th Cir. 2026). The Sixth Circuit held that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous" but reasoned that § 922(g)(1) "might be susceptible to an as-applied challenge" if a felon could "me[e]t his burden to demonstrate that he is not dangerous." *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024). That court explained that, when considering a defendant's dangerousness, courts should consider "each individual's specific characteristics" and his "entire criminal record—not just the predicate offense." *Id.*

Only one other circuit has found § 922(g)(1) unconstitutional in any application, and it did so in very narrow circumstances. The Third Circuit found the statute unconstitutional as applied to a civil plaintiff with a nearly 30-year-old conviction for understating his income on a food-stamp application. *Range v. Attorney General*, 124 F.4th 218, 222-23 (3d Cir. 2024) (en banc). But the Third Circuit has since clarified that the as-applied inquiry "must consider a convict's entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction."[1] *Pitsilides*, 128 F.4th at 212.

---

[1] In two pending cases, the en banc Third Circuit is re-considering whether courts may consider evidence beyond the predicate conviction when

In sum, this Court's decisions entertaining as-applied challenges to § 922(g)(1) directly conflict with the decisions of six circuits. Its decisions disregarding the defendant's broader criminal history when addressing those challenges conflict with decisions from the Third and Sixth Circuits. And its now half-dozen decisions holding § 922(g)(1) unconstitutional in various applications stand in marked contrast to the Third Circuit's narrow decision in *Range*. Rehearing is therefore warranted. *See* Fed. R. App. P. 40(b)(2)(C).

## III. Section 922(g)(1)'s Constitutionality Is an Issue of Exceptional Importance.

The question presented in this case is of exceptional importance. *See* Fed. R. App. P. 40(b)(2)(D). Section 922(g) "is no minor provision" and "probably does more to combat gun violence than any other federal law." *Rehaif v. United States*, 588 U.S. 225, 239 (2019) (Alito, J., dissenting). In Fiscal Year 2025, the government obtained more than 7,200 convictions under § 922(g), and 89% of those convictions (more than 6,400) were under § 922(g)(1). *See* U.S. Sent. Comm'n, *Quick Facts: Felon in Possession of a Firearm*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Section_922g_FY25.pdf. This accounts for the

---

evaluating as-applied challenges to § 922(g)(1). *See United States v. Bost*, No. 24-1719 (3d Cir.) (argued Feb. 11, 2026), *Williams v. Attorney General*, No. 24-1091 (3d Cir.) (argued Feb. 11, 2026).

hundreds of Second Amendment challenges this Court has faced and continues to face in appeals from § 922(g)(1) convictions.

Section 922(g)(1)'s constitutionality is an important question. "Striking down an Act of Congress is the gravest and most delicate duty that [the Supreme] Court is called on to perform." *Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 556 (2013) (quotation omitted). Yet this Court's Second Amendment precedent has compelled it to strike down § 922(g)(1) in multiple cases. The full Court's review is warranted.

## IV. Section 922(g)(1) Complies With the Second Amendment.

This Court should align itself with most circuits and hold that as-applied challenges to § 922(g)(1) are not necessary. At the very least, this Court should align itself with the Third and Sixth Circuits and hold that a defendant raising an as-applied challenge to § 922(g)(1) must show based on all relevant circumstances that he would not be dangerous if armed.

The United States briefly sketches the appropriate analysis below. But it respectfully requests an opportunity for supplemental briefing if the Court grants rehearing en banc. Because it was constrained by circuit precedent, the government's panel-stage brief did not present all aspects of the analysis that the en banc Court should adopt.

### A. Section 922(g)(1) is constitutional as a general matter.

The Second Amendment protects the fundamental right "of the people to keep and bear Arms." U.S. Const. amend. II. That right "is not unlimited" and does not prevent "presumptively lawful" regulations such as "longstanding prohibitions on the possession of firearms by felons." *Heller v. District of Columbia*, 554 U.S. 570, 626-27 & n.26 (2008). Felon-possession prohibitions are permissible because they are consistent with historical firearms regulations in "how and why [they] burden a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 29. Specifically, they are consistent with two historical traditions: (1) legislatures' historical "power to strip certain groups of the right to bear arms," *Kimble*, 142 F.4th at 315 (emphasis and quotation omitted); and (2) the "historical tradition of permanently punishing certain offenders" with death or estate forfeiture, *Diaz*, 116 F.4th at 469.

### 1. Section § 922(g)(1) is consistent with legislatures' historical authority to disarm dangerous groups.

As this Court has recognized, "history and tradition support Congress's power to strip certain *groups* of the right to bear arms." *Kimble*, 142 F.4th at 315 (quotation omitted). This historical authority extends to disarming groups based on "threatened violence" or a "propensity for dangerous behavior," *Kanter v. Barr*, 919 F.3d 437, 456, 469 (7th Cir. 2019) (Barrett, J., dissenting), and not merely those who committed actual violence. For example, during the

11

American Revolution, the Continental Congress recommended, and most states enacted, laws disarming loyalists and others who refused to swear allegiance to the new Republic. *See Duarte*, 137 F.4th at 765 & n.5 (Collins, J. concurring in the judgment). This "trend of class-wide disarmament continued into the mid-1800s," when "[d]ozens of laws were enacted that categorically prohibited tramps from possessing firearms." *Watson*, 171 F.4th at 1021; *see id.* at 1021 n.6 (citing statutes).

As the Eighth Circuit observed, "[n]ot all persons disarmed under historical precedents . . . were violent or dangerous persons." *Jackson*, 110 F.4th at 1128. For example, "not all 'tramps' were 'vicious' or 'dangerous.'" *Duarte*, 137 F.4th at 760. Yet historical legislatures "were permitted to categorically disarm those they deemed dangerous." *Id.*

This historical tradition permits Congress to make the categorical judgment that all felons "present a special danger of misuse" of firearms, *United States v. Rahimi*, 602 U.S. 680, 698 (2024), even those convicted of nonviolent offenses. Through the Gun Control Act, Congress "sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States*, 423 U.S. 212, 218 (1976). And convictions for even nonviolent felonies correlate closely with dangerousness. For example, a 2021 study found that nearly one third of state

12

prisoners (31.7%) whose most serious commitment offense was fraud or forgery were re-arrested for a violent offense within ten years of release. Bureau of Justice Statistics, Recidivism of Prisoners Released in 24 States in 2008: A 10-Year Follow-Up Period (2008-2018) (Sep. 2021), at 10 (Table 11), https://bjs.ojp.gov/BJS_PUB/rpr24s0810yfup0818/Web%20content/508%20 compliant%20PDFs. The re-arrest rate for violent offenses was even higher (34.8%) for those convicted of drug-related offenses, even though that group was evenly divided between drug-possession and drug-trafficking offenders. *Id.* at 3 (Table 2), 10 (Table 11). Just as historical legislatures could disarm potentially dangerous groups, Congress could reasonably conclude that felons "present a special danger of misuse" of firearms. *Rahimi*, 602 U.S. at 698.

> **2. Section 922(g)(1) is consistent with legislatures' historical authority to punish felony offenses severely and permanently.**

Additionally, historical legislatures authorized severe punishment such as the death penalty and estate forfeiture for many felonies—including non-violent offenses. American colonies and later states "prescribed the death penalty for a variety of felonies, including certain instances of counterfeiting, fraud, theft, and perjury." *Duarte*, 137 F.4th at 771 (Collins, J. concurring in the judgment); *see id.* at 771 nn. 9, 10 (citing statutes). The First Congress (which adopted the Second Amendment's language in 1789) authorized the

death penalty for counterfeiting and forgery of public securities in 1790. *See* Act of Apr. 30, 1790, ch. 9, § 14, 1 Stat. 112, 115. The Second Congress authorized the death penalty for theft of the mail two years later. Act of Feb. 20, 1792, ch. 7, § 17, 1 Stat. 232, 237. And in the first four decades after the founding, states "carried out" executions for "crimes against . . . property" like "arson, forgery, and horse stealing." *Watson*, 171 F.4th at 1023 (quotation omitted). Because capital punishment was permissible for such crimes, "the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." *Diaz*, 116 F.4th at 469.

This "greater includes the lesser" principle, *Watson*, 171 F.4th at 1024 (quotation omitted), is relevant regardless of whether a modern defendant's specific offense would have been capital "at the Founding," *Diaz*, 116 F.4th at 469. "[T]he Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Rahimi*, 602 U.S. at 691-92. "[F]elonies were—and remain—the most serious category of crime." *Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019). And the historically severe punishment attached to felonies supports Congress's ability to punish all felonies, regardless of their vintage, with disarmament.

14

### 3. The founding-era understanding of the Second Amendment confirms Congress's power to disarm felons.

Other evidence confirms that disarming felons is consistent with the Second Amendment's historical understanding. At Pennsylvania's ratifying convention, Anti-Federalists proposed a bill of rights that would have prohibited "disarming the people, or any of them, *unless for crimes committed*, or real danger of public injury from individuals." 2 *The Documentary History of the Ratification of the Constitution* 598 (Merrill Jensen ed., 1976) (emphasis added). Although this proposal was defeated by Federalists who deemed it unnecessary, the Anti-Federalists published it in a "highly influential" dissent. *Heller*, 554 U.S. at 604. Model legal codes proposed by Edward Livingston in the early nineteenth century listed the "suspension" and permanent "forfeiture" of "political or civil rights"—including the "right of bearing arms in defence of the country"— among the punishments courts could impose. *See* Edward Livingston, *System of Penal Law, Prepared for the State of Louisiana* 26-27, 29, 49, 73, 138 (1824); *see also* Edward Livingston, *A System of Penal Law for the United States of America* 19-20, 40, 79, 126 (1828). And founding-era legislatures required "forfeiture of firearms by persons who committed non-violent hunting offenses." *Jackson*, 110 F.4th at 1127 (citing laws). Like the Pennsylvania ratification proposal and Livingston's model legal codes, these

15

firearm-forfeiture laws "support a historical tradition of disarming those who violated the law." *Duarte*, 137 F.4th at 756 n.10.

### 4. Any constitutional concerns on the margins are remediated by § 925(c).

Even if § 922(g)(1) would raise constitutional concerns in some unusual applications, Congress has already addressed those concerns through 18 U.S.C. § 925(c), which allows a person subject to § 922(g)'s various prohibitions to "make application to the Attorney General for relief from the disabilities." "[T]he Attorney General may grant such relief" if the applicant shows that "the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." *Id.* A person whose application is denied may seek judicial review in federal district court. *Id.*

Since 1992, appropriations statutes have prohibited ATF from using appropriated funds to act on § 925(c) applications. *See United States v. Bean*, 537 U.S. 71, 74-75 (2002). But last year the Attorney General issued an interim final rule withdrawing the delegation of authority to ATF to administer § 925(c). *See Withdrawing the Attorney General's Delegation of Authority*, 90 Fed. Reg. 13,080 (Mar. 20, 2025). The Attorney General has already granted relief under § 925(c) to dozens of individuals. *See Granting of Relief; Federal Firearms*

*Privileges*, 90 Fed. Reg. 17,835 (Apr. 29, 2025); 91 Fed. Reg. 8,532 (Feb. 23, 2026); 91 Fed. Reg. 32,094 (May 29, 2026). The Department of Justice has issued a notice of proposed rulemaking to establish "criteria to guide determinations for granting relief." *Application for Relief From Disabilities Imposed by Federal Laws With Respect to the Acquisition, Receipt, Transfer, Shipment, Transportation, or Possession of Firearms*, 90 Fed. Reg. 34,394 (July 22, 2025). And a final rule should issue shortly.

Through § 925(c), Congress addressed any constitutional concerns about the breadth and duration of the restriction imposed by § 922(g)(1). As the Sixth Circuit has observed, "the rearmament criteria in § 925(c) map neatly onto the dangerousness principle underlying traditional firearm regulation." *Williams*, 113 F.4th at 661. Even assuming felons must be afforded an opportunity to rebut the legislature's class-wide determination of dangerousness, that requirement is satisfied where, as under § 925(c), the Executive Branch makes a determination that is subject to judicial review in federal district court. Moreover, as the Supreme Court observed, determining "[w]hether an applicant is 'likely to act in a manner dangerous to public safety'" is "a function best performed by the Executive, which, unlike courts, is institutionally equipped for conducting a neutral, wide-ranging investigation." *Bean*, 537 U.S. at 77.

**B.    At the very least, § 922(g)(1) is constitutional as applied to dangerous felons like Cordova.**

Even if § 922(g)(1) were unconstitutional as applied to some individuals, it would still be constitutional as applied to defendants like Cordova, whose criminal history and other conduct show them to be dangerous.  As the panel correctly concluded, Cordova's conviction for vehicular evasion of arrest "demonstrate[s] that he poses a credible threat to the physical safety of others" sufficient to doom his Second Amendment challenge.  *Cordova*, 176 F.4th at 382-83; *see Simpson*, 152 F.4th at 614-15.  In addition, Cordova possessed a firearm in this case while possessing a digital scale and hypodermic syringe and, by his own admission, attempting to "score" drugs.  ROA.274.

If as-applied challenges are ever permitted, they should be "fact-specific" inquiries in which the defendant has the "burden to demonstrate that he is not dangerous."  *Williams*, 113 F.4th at 657, 660.  "[N]othing in the Second Amendment's text or history limits 'dangerousness' to the particular felony (if any) listed in an indictment or plea agreement."  *Id.* at 660. Accordingly, to the extent the Court entertains as-applied challenges to § 922(g)(1), it should not blind itself to the defendant's entire criminal history and his contemporaneous criminal conduct.

# CONCLUSION

This Court should grant rehearing en banc, permit supplemental briefing, clarify the appropriate analysis as explained above, and affirm Cordova's conviction.

Respectfully submitted,

JUSTIN R. SIMMONS
United States Attorney

A. TYSEN DUVA
Assistant Attorney General

ZACHARY C. RICHTER
Assistant United States Attorney
Western District of Texas

JOSH A. GOLDFOOT
Deputy Assistant Attorney General

s/William A. Glaser
WILLIAM A. GLASER
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave, NW, Ste. 1264
Washington, DC 20530
(202) 532-4495
William.Glaser@usdoj.gov

## CERTIFICATE OF COMPLIANCE

1.    This response complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A) because it contains 3,881 words, excluding the parts of the response exempted by Fed. R. App. P. 32(f).

2.    This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Calisto MT 14-point type.

s/William A. Glaser
WILLIAM A. GLASER
